United States District Court
Southern District of Texas
**ENTERED**
August 15, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Kayla Matheson, | § § § | |
| *Plaintiff,* | § § § | Civil Action No. 4:21-cv-00451 |
| v. | § § | |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | § § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND RECOMMENDATION

This is an appeal from an administrative ruling that denied Plaintiff Kayla Matheson's request for social security benefits, which was referred to the undersigned judge. Dkt. 24. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court recommends granting Matheson's Motion for Summary Judgment (Dkt. 20) and denying Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 23).

### Background

Matheson filed for social security benefits under Title II and Title XVI on February 14, 2019, claiming a disability onset date of January 9, 2018. R.15. She claimed she suffered from bipolar disorder, non-epileptic severe seizures, fibromyalgia, brain bleed, memory loss, breast cancer, restless leg

syndrome, hyperthyroidism, anxiety, and herpes. R.323. Her claim was denied initially and upon reconsideration on November 6, 2019 and February 24, 2020, respectively. R.15. After a hearing, the administrative law judge (ALJ) issued an adverse decision, denying Matheson benefits. *See* R.15-28.

At the time Matheson filed for benefits, she was 48 years old. R.26. For over fifteen years prior to applying, Matheson was an elementary English school teacher. R.42, 45. She taught with Anahuac Independent School District from January 1999 to December 2015, R.325, and she was last employed by Beaumont Independent School District. R.308-10, 317. On January 8, 2018, she suffered a fall at work. *Id.* She attempted to return to work the next semester but was released by the principal after only one week because she continued to fall and struggle with her memory. *Id.*

At the hearing, Matheson testified that the seizures continued and remain her most disabling issue, as she has been hospitalized twelve times for them. R.45-46. Even with three prescription medications, she reported experiencing "pseudo seizures" approximately every other day, though she acknowledged that they were "not epileptic." R.49. Matheson also testified that she was no longer able to drive or live alone due to her seizures. *Id.* She had to move in with her parents, who could monitor her and call ambulances when she experienced episodes. R.46. She claimed that her seizures interplay with her mental health as well, as stress tends to trigger them. R.53-54.

In addition to these stress and anxiety issues, Matheson reported having bipolar affective disorder, post-traumatic stress disorder, and borderline schizophrenia. R.50. She attributes her eight suicide attempts to her poor mental health, which occurred despite her being prescribed antidepressants and receiving psychiatric care since 1990. R.50-51.

On September 2, 2020, the ALJ issued an opinion finding Matheson not disabled. R.15-28. The ALJ found that Matheson suffered from the severe impairments of bipolar disorder, anxiety disorder, depressive disorder, post-traumatic stress disorder, personality disorder, post-concussion syndrome, mild neurocognitive disorder with memory problems, and pseudo seizures pursuant to 20 CFR §§ 404.1520(c) and 416.920(c). R.17. Nevertheless, the ALJ found that Matheson did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in 20 CFR Pt. 404, Subpt. P, Appendix 1. R.18-19.

Upon finding that Matheson was not presumptively disabled at that step, the ALJ then determined that Matheson had a residual functional capacity (RFC) to "perform a full range of work at all exertional levels," provided that she avoid climbing, balance, and workplace hazards. R.20. He also found that Matheson "can have (sic) occasionally deal with the public, relate to others, and interact with supervisors." *Id.* In reaching this determination, the ALJ disregarded three physicians' opinions as

3

unpersuasive. R.20-25. Given this RFC, the ALJ found that Matheson could hold jobs that were available in the national economy, including those identified by the vocational expert who testified at the hearing. R.26-27. This included jobs such as laundry worker, office cleaner, and mail clerk. *Id.*

Matheson unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, RR.1-3, which rendered the ALJ's decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## **Standard of Review**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "'more than a scintilla, but it need not be a preponderance.'" *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four

5

and five. *Morgan v. Colvin*, 803 F.3d 773, 776 n.2 (5th Cir. 2015) (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Morgan*, 803 F.3d at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

## II. The ALJ failed to explain why Matheson's impairments did not meet or equal any listed impairments.

Matheson filed a motion for summary judgment, claiming that the ALJ committed myriad errors. *See* Dkt. 20. Most prominently, Matheson argues that (i) the ALJ failed to adequately consider her eligibility for meeting or equaling any listed impairments during step three; (ii) the ALJ wrongly disregarded her mental health evaluations; and (iii) that the ALJ's RFC was not supported by substantial evidence. *Id.* Because the Court finds that the ALJ erred in step three, it need not address Matheson's other issues that concern subsequent steps in the analysis.

### A. The ALJ failed to support his mental impairment findings with substantial evidence.

#### 1. Analytic framework for step three

During step three of the ALJ's analysis, "the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). Each impairment's listing contains multiple paragraphs of criteria, described as paragraphs A, B, and C. Generally, the criteria set forth in paragraph A outlines the medical diagnoses and symptoms that must be present in the record. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Paragraphs B and C outline "impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *McGowan v. Saul*, 2021 WL 799325, at *3 (S.D. Tex. Jan. 6, 2021) (quoting *Willingham v. Comm'r of Soc. Sec. Admin.*, 2014 WL 1050286, at *3 n.3 (E.D. Tex. Mar. 14, 2014)), *report and recommendation adopted*, 2021 WL 951859 (S.D. Tex. Mar. 10, 2021). A claimant is presumptively disabled if she shows that she meets requirements of paragraphs A and B or paragraphs A and C. *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1); *see also Heck v. Colvin*, 674 F. App'x 411, 414 (5th Cir. 2017) (claimant bears the burden of proving she meets or equals a particular listing).

At step three, this ALJ determined that the severity of Matheson's mental impairments, "considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, and 12.08." R.19. The ALJ did not describe the medical criteria set forth in paragraph A of any of these four listings—nor did he even identify the names of the impairments that corresponded with each listing. *Id.* They are, respectively, schizophrenia spectrum and other psychotic disorders (§ 12.03); depressive, bipolar and related disorders (§ 12.04); anxiety and obsessive-compulsive disorders (§ 12.06); and personality and impulse-control disorders (§ 12.08). 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.03, 12.04, 12.06, and 12.08.

### 2. The ALJ's flawed analysis of Matheson's limitations

The ALJ did not discuss whether the record contained evidence of the medical diagnoses or symptoms required by any listing's paragraph A—*e.g.*, the medical criteria for schizophrenia spectrum or bipolar disorder. *See* R.18-19. The ALJ skipped this analysis and addressed only paragraphs B and C, treating the mental impairment listings as an aggregate.

The four listings considered by the ALJ all have the same paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00. Paragraph B measures the extent of a claimant's limitations in four functional categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or

8

managing oneself. *Id.* The magnitude of limitation in these areas is evaluated on a "five-point rating scale," ranging from no limitation to "marked" limitation and "extreme" limitation—the two highest ratings. *Id.* If Matheson had at least a marked limitation in two functional categories or a single extreme limitation in one functional category, she would have satisfied paragraph B. *Id.* The ALJ found that Matheson's functional limitation in all four categories was "moderate," with the entirety of his analysis set forth below:

> [1] In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant testified that she has difficulties with her memory. Nevertheless, on July 29, 2019, she exhibited logical thought processes and was free of suicidal or homicidal ideations. Her memory, recall, attention and concentration were intact.
>
> [2] In interacting with others, the claimant has a moderate limitation. *She spent time locked in a dark room to avoid being around others.*
>
> [3] With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. Particularly, the July 29, 2019 examination demonstrated her memory, recall, attention, and concentration were intact. The claimant also had fair insight and judgment.
>
> [4] As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant testified that she *moved in with her parents after sustaining the fall, as she required assistance in the home.*

R.19 (numeration and emphasis added; internal citations omitted). The ALJ's analysis of these listings ends with a conclusory statement that he "has also

9

considered whether the 'paragraph C' criteria are satisfied" and that "the evidence fails to establish the presence of the 'paragraph C' criteria." *Id.*

Under the Social Security Act, Defendant is required to provide "a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting 42 U.S.C. § 405(b)(1)). This requires the ALJ to "to discuss the evidence offered in support of [the] claim for disability and to explain why [he] found [Matheson] not to be disabled at the step." *Hunter v. Kijakazi*, 2022 WL 3048177, at *5 (S.D. Tex. July 18, 2022) (quoting 42 U.S.C. § 405(b)(1)), *report and recommendation adopted*, 2022 WL 3043539 (S.D. Tex. Aug. 2, 2022); *see also Audler*, 501 F.3d at 448 (the ALJ's failure to "provide any explanation as to how she reached the conclusion that the [claimant's] symptoms are insufficiently severe to meet any listed impairment" justified vacatur and remand); *Cadzow v. Colvin*, 2013 WL 5585936, at *3-4 (N.D. Tex. Oct. 10, 2013) (same).

Here, the ALJ failed to provide the statutorily required reasoning and explanation. He did not contend with any evidence that supported Matheson's claims, citing only two sources of evidence: Matheson's hearing testimony and a July 29, 2019 doctor visit. R.19. On appeal, Matheson identifies numerous pieces of evidence that would support a more severe finding for her limitations.

10

*See* Dkt. 23 at 13-21. Most notably, Matheson testified that she attempted to take her life eight times and has struggled with mental health despite medication—neither of which were mentioned in the ALJ's opinion. R.50-51.

Additionally, Matheson identified psychiatric records and evaluations from doctors that indicate more severe limitations. She relies most heavily on those written by her treating psychiatrist, Dr. Paul Young. *See* Dkt. 23 at 13-16. Matheson began to see Dr. Young in May 2016, two years before her alleged disability onset date. R.596-607 (2016 and 2017 records from Dr. Young). Although she had not visited Dr. Young in several months prior to her allegedly disabling fall, Matheson restarted treatment in 2018.

In her February, May, June, and August 2018 visits, Dr. Young noted that Matheson exhibited signs of depression and anxiety—including excessive worries, and eventually, catastrophizing. R.592-95. In subsequent visits in January and December 2019 and April 2020, Dr. Young's records reflect that Matheson's anxiety and depression continued to manifest the same symptoms, but she also began to report panic attacks. R.789, 794-96. After Matheson filed for social security benefits, Dr. Young opined that her functioning was markedly or extremely limited in several ways due to these diagnoses—albeit in response to a list-format mental health questionnaire. R.608-13. Despite

the years-long documentation of treatment with Dr. Young, the ALJ did not address any favorable medical evidence in his step three determination.[1]

The ALJ's inadequate analysis is exacerbated by the contradictory nature of its few references to the record. For the second and fourth functions—interacting with others and adapting or managing oneself, respectively—the ALJ found it determinative that Matheson "spent time locked in a dark room to avoid being around others" and had "moved in with her parents after sustaining the fall, as she required assistance in the home." *Id.* These facts from Matheson's hearing testimony undermine the notion that Matheson is only moderately limited in these categories. R.46, 56. To the contrary, they support Matheson's position that she is more limited than the ALJ determined. So even if the ALJ's cursory conclusion about Matheson's eligibility for listings 12.03, 12.04, 12.06, and 12.08 were permissible (which it is not), the conclusions drawn from the cited evidence are illogical.

---

[1] While formulating Matheson's RFC, the ALJ found that Dr. Young's opinions were unpersuasive. R.24. But the ALJ acknowledges that the determination of listed criteria and the determination of an RFC are distinct analyses. R.20. He nevertheless failed to identify, discuss, or discredit relevant medical evidence from Dr. Young (or any provider) that would have supported Matheson's disability finding during this earlier phase. Moreover, when determining Matheson's RFC, the ALJ found a number of administrative and consulting opinions to be persuasive, including those from Dr. Blaine Carr, Dr. Jean Germain, Dr. Laurence Ligon, and Dr. Roberta Herman. R.25. His discussion of their persuasiveness is equally cursory and, in any event, no such parallel discussion of their opinions was included in his listed-impairment analysis.

Accordingly, the ALJ failed to explain his step three determination of Matheson's mental impairments. The evidence discussed is sparse, contradictory, and conclusory to the point that this Court cannot conduct "meaningful judicial review." *Audler*, 501 F.3d at 448 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)); *see* SSR 16-3p (S.S.A. Oct. 25, 2017) (an ALJ's decision must "be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"). The Court cannot assess whether the ALJ's determination was supported by substantial evidence based on such a bare-bones opinion.

### B. The ALJ failed to support his epilepsy finding with substantial evidence.

Matheson argues that the ALJ's analysis of listing 11.02 (epilepsy) also constituted reversible error. Dkt. 20 at 4-10. Matheson is correct, as the ALJ's discussion of this listing is even more cursory than his discussion of the mental health listings. The entirety of the ALJ's epilepsy analysis is set forth below:

> The undersigned carefully considered listing 11.02 (epilepsy) however the record did not reflect generalized tonic-clonic seizure, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment. There was no evidence of dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. There was no evidence of … dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment. Additionally, there was no confirmation of generalized tonic-clonic seizure, occurring at least once every 2 months for at least 4 consecutive months and a marked limitation in one of the following: physical functioning;

13

> understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself.

R.18-19. This determination merely parrots the four regulatory standards for the epilepsy listing under 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 11.01 and 11.02. The agency's policy makes clear that this is deficient. "It is … not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p (S.S.A. Oct. 25, 2017).

Separately, Matheson repeatedly acknowledged at the hearing that her seizures were "pseudo seizures" and that she did not have epilepsy or epileptic seizures. R.49, 65, 68. On appeal, Matheson does not argue that there is medical documentation that she experienced seizures at requisite rate and duration for any of the four specifications for an epilepsy finding. Dkt. 20 at 10. She instead argued that her impairment is "medically equivalent to a listed impairment" because "it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* (quoting 20 C.F.R. § 404.1526). Among other evidence, Matheson identifies opinions about the severity of her seizures from Drs. Feldman, Kim, Sahi, and Patel, *id.* at 5-8, and points to the fact that she

14

has been hospitalized 12 times and can no longer live alone, *id.* at 4. None of this evidence was discussed by the ALJ. He simply determined that she did not meet the medical criteria for epilepsy—which she did not purport to meet—without analyzing evidence germane to whether she could medically "equal" the impairment under § 404.1526.

Defendant claims that the ALJ's determination should be affirmed because Matheson bore the burden of proving that she met or equaled the listing. Dkt. 23-5-8. Though Defendant is correct about Matheson's burden of proof, *Heck*, 674 F. App'x at 414, her response is a non sequitur. Matheson had the burden of providing the ALJ with evidence to find that she met or equaled the listed requirements for epilepsy, and the ALJ was obligated to explain why she did not meet that burden. *See Audler*, 501 F.3d at 447. Because the ALJ did not fulfill his obligation, he failed to provide the Court with an opinion that could be meaningfully reviewed. *Id.* at 448. The ALJ's deficient analysis of the epilepsy listing therefore constitutes independent grounds for error.

### C. The ALJ's failure to conduct a fulsome analysis of his step three findings was prejudicial.

The ALJ's errors require vacatur and remand for further proceedings only if Matheson's substantial rights have been affected. *Kneeland*, 850 F.3d at 761. In other words, Matheson must show that she was "prejudiced by the agency's failure to follow a particular rule before such a failure will be

15

permitted to serve as the basis for relief from an ALJ's decision." *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Matheson was prejudiced if, absent the ALJ's error, the decision may have been different. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). The Fifth Circuit has found that an ALJ's failure to explain his listed-impairment determination and is prejudicial and warrants remand. *Audler*, 501 F.3d at 449. Other courts within the Fifth Circuit have done the same. *See, e.g.*, *Hunter,* 2022 WL 3048177, at *5-6; *Cadzow*, 2013 WL 5585936, at *3-4. *Cf. McGowan*, 2021 WL 799325, at *6 (finding that an ALJ had supported the step three determination with substantial evidence because she "cited evidence and adequately explained her reasons for assigning Plaintiff only moderate limitations in each of the four paragraph B mental functioning areas"; vacating and reversing on other grounds).

Accordingly, this Court recommends that the ALJ's decision be vacated and remanded. The ALJ's minimal and contradictory findings on Matheson's mental impairments were prejudicial. Had he determined that she was more than moderately limited in her ability to interact with others and adapt or manage herself, she may have satisfied the criteria of paragraph B for the listings for schizophrenia spectrum and other psychotic disorders (§ 12.03); depressive, bipolar and related disorders (§ 12.04); anxiety and obsessive-compulsive disorders (§ 12.06); personality and impulse-control disorders (§ 12.08). *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.03, 12.04, 12.06, and

12.08. But instead, the ALJ questionably deemed her less limited because she "spent time locked in a dark room" and "moved in with her parents … as she required assistance in the home." R.19. Likewise, he did not consider at all whether Matheson medically *equaled* the epilepsy listing (11.02), which is the theory that Matheson advanced. R.18-19.

These deficiencies demonstrate that a clearer and more fulsome analysis of the medical evidence is necessary. If Matheson had been found to meet or medically equal any of these five listed criteria, she would have been deemed presumptively disabled and entitled to benefits. The ALJ's analysis would have ended there—without the need for the ALJ to determine Matheson's RFC or ability to perform jobs in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Because the Court cannot provide a *post hoc* rationale for the ALJ's deficient analysis, *see Hunter*, 2022 WL 3048177, at *5, further proceedings before the agency are warranted.

## Recommendation

Accordingly, the Court **RECOMMENDS** that Matheson's Motion for Summary Judgment (Dkt. 20) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 23) be **DENIED**, that the decision of the Commissioner of the Social Security Administration be **VACATED,** and the matter be **REMANDED** for further administrative proceedings.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 15, 2022 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge